```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SLIMANE BENABDELMOUTALEB,
                                                              MEMORANDUM & ORDER
                    Petitioner,                               04-CV-3237 (NGG)

        –against–

JOHN ASHCROFT, United States Attorney
General,

                    Respondent.
----------------------------------------------------------X
```
GARAUFIS, United States District Judge.

Slimane Benabdelmoutaleb petitions pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the validity of an order of removal on a number of grounds. The government responds that this court lacks jurisdiction over this case because the Attorney General is improperly named as the respondent; instead, it contends that the case should be transferred to the Eastern District of Louisiana, where personal jurisdiction exists over the proper respondent to the petition. The government also argues that venue is improper in this District and that the case should be transferred to the Western District of Louisiana, where venue would be proper because it is the District in which the material events of the case occurred. If the court does not transfer the case for either of these reasons, the government argues that Benabdelmoutaleb's claims are without merit. For the reasons set forth below, this court has jurisdiction over Benabdelmoutaleb's petition for a writ of habeas corpus challenging a final order of removal, venue is proper in this District, and the writ of habeas corpus is denied.

I.      **Factual and Procedural History**

Benabdelmoutaleb, a native and citizen of Algeria, entered the United States on or about

1

January 9, 1990 as a visitor with authorization to remain in the United States for a period of up to six months. (Declaration of Margaret Kolbe (hereinafter "Kolbe Decl."), Ex. H at 2.) Benabdelmoutaleb, however, failed to adhere to this limitation. He was convicted in this District on March 2, 2001 for possession of unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(3), 1029(c)(1)(A)(I), and sentenced to a term of 12 to 18 months imprisonment. (Id., Ex. A.)

Following his imprisonment, Benabdelmoutaleb was placed in removal proceedings and charged with inadmissibility pursuant to § 212(a)(6)(a)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(a)(i), and pursuant to INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), because of his presence in the United States without documentation and his 2001 conviction. (Id., Ex. C.) On June 5, 2003, the proceedings were terminated by the presiding immigration judge ("IJ") when it was revealed that Benabdelmoutaleb had been admitted into the United States as a tourist and so INA § 212 was inapplicable as a means of deporting him. (Id., Exs. D, H at 1.)

The Immigration and Naturalization Service ("INS") issued a new charging document against Benabdelmoutaleb on June 10, 2003 alleging that he was deportable for remaining in the United States for longer than he was permitted, pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), and for being an alien convicted of an aggravated felony under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). In response to the initiation of these new proceedings, Benabdelmoutaleb claimed that they should be terminated because the IJ's June 5, 2003 decision should be given res judicata effect. (Id., Ex. F.) Benabdelmoutaleb's motion to terminate was denied by an IJ on July 17, 2003. (Id., Ex. H.)

Benabdelmoutaleb invoked a number of statutory provisions to avoid deportation in these new proceedings. He applied for a waiver of inadmissibility pursuant to INA § 212(h), 8 U.S.C. § 1182(h) ("212(h) relief"), in conjunction with his application for adjustment of status pursuant to INA § 245(a), 8 U.S.C. § 1255(a); withholding of removal pursuant to INA § 241(b)(3)(a), 8 U.S.C. § 1231(b)(3)(A); withholding of removal pursuant to the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted Dec. 10, 1984, S. Treaty Doc. No. 100-200 (1988), 1465 U.N.T.S. 85 ("CAT"); and deferral of removal pursuant to the CAT. (Id., Exs. I-K.) On July 17, 2003, an IJ found Benabdelmoutaleb removable and denied all of his requests for relief from removal. (Id., Ex. M.) Benabdelmoutaleb's appeal of this decision was dismissed by the Board of Immigration Appeals ("BIA") on September 27, 2004. (Id., Ex. N.) Immigration and Customs Enforcement ("ICE") later reviewed Benabdelmoutaleb's custody and, by decision dated October 22, 2004, declined to release him from custody. (Id., Ex. Q.)

Benabdelmoutaleb filed the instant petition on July 29, 2004. In his petition, Benabdelmoutaleb raises the following six grounds for relief: (1) the BIA's decision violated his right to due process; (2) the removal proceedings were barred by res judicata; (3) the IJ and BIA erred as a matter of law by applying the wrong standards in determining whether his underlying conviction was for a "particularly serious crime"; (4) the IJ and BIA abused their discretion by denying him § 212(h) relief; (5) he was eligible for withholding pursuant to INA § 241(b)(3); and (6) he should also have been granted relief under CAT.

On October 19, 2004 Benabdelmoutaleb filed a response in opposition ("October 19 Opposition") to the government's request for an extension of time to respond to the court's

August 11, 2004 Order to Show Cause, in which he also challenged his present confinement, requesting that he be released on supervision or a reasonable amount of bond.

The government has since responded to both Benabdelmoutaleb's petition challenging his order of deportation and to his subsequent October 19 Opposition challenging the duration of his present confinement.

## II.    Jurisdiction

Although Benabdelmoutaleb has filed only one petition for a writ of habeas corpus, he has, nonetheless, challenged his custody in two distinct manners, each of which demands its own consideration of this court's jurisdiction to hear his claims.

*A.    October 19 Opposition: Challenge to Present Physical Confinement*

In his October 19 Opposition, Benabdelmoutaleb argued that the length of his current confinement is unreasonable under the standards laid out by the Supreme Court in Kim v. Demore, 538 U.S. 510 (2003) and Zadvydas v. Davis, 533 U.S. 678 (2001). As a result, he asserted that the court should order him released on supervision or a reasonable amount of bond. The court construes Benabdelmoutaleb's October 19 Opposition as a second petition for habeas corpus challenging his present physical confinement.

In response, the government contends that under Rumsfeld v. Padilla, 124 S.Ct. 2711 (2004), this court lacks jurisdiction over such a challenge. The government is correct. Since Benabdelmoutaleb's opposition to the length of his incarceration is a "core habeas petition[] challenging present physical confinement, jurisdiction lies only in one district: the district of confinement." Id. at 2722; see also Deng v. Garcia, 352 F.Supp.2d 373 (E.D.N.Y. 2005) (Garaufis, J.) (transferring a habeas petitioner's challenge to his immediate physical detention to

4

the district of confinement).  Thus, the only proper respondent to this second petition is the warden of the Federal Detention Center in Oakdale, Louisiana.  Accordingly, Benabdelmoutaleb's second petition, the October 19 Opposition, is hereby transferred to the Western District of Louisiana.

B. *Challenge to Removal*

In his petition challenging removal, Benabdelmoutaleb named former Attorney General John Ashcroft as the respondent.  The government, again relying on Padilla, responds that the only proper respondent to this challenge is the ICE New Orleans Field Office Director ("FOD"), the official who the government claims has control over Benabdelmoutaleb's removal from the United States.  Accordingly, the government asserts that this court should transfer the petition to the Eastern District of Louisiana, where the district court could exercise personal jurisdiction over the ICE New Orleans FOD.

For the reasons I articulated in Somir v. United States, 354 F.Supp.2d 215, 217-18 (E.D.N.Y. 2005), I conclude that the Attorney General may properly be named as the respondent to Benabdelmoutaleb's petition because it challenges the government's efforts to remove him from the country and not his present physical confinement.[1]

Because the Attorney General can be properly named as the respondent for a habeas

---

[1] In a footnote, the government contends, relying once again on Padilla, that even if this court determines that the Attorney General is the proper respondent, it would still lack jurisdiction because only the District of Columbia would be able to exercise personal jurisdiction over the Attorney General by virtue of the fact that he resides there.  This position is without merit.  It is quite clear that the Attorney General is subject to New York's long-arm jurisdiction when named in his official capacity.  See Henderson v. INS, 157 F.3d 106, 124 n.19 (2d Cir. 1998); Arias-Agramonte v. Comm'r of INS, No. 00 Civ. 2412, 2000 WL 1617999, at *9 (S.D.N.Y. Oct. 30, 2000); Mojica v. Reno, 970 F.Supp. 130, 166-67 (E.D.N.Y. 1997) (Weinstein, J.).

petition challenging a final order of removal, and because this court has personal jurisdiction over the Attorney General, I conclude that this court has subject matter jurisdiction to entertain Benabdelmoutaleb's petition.

## III. Venue

Despite finding that this court may exercise personal jurisdiction over the Attorney General, and therefore over Benabdelmoutaleb's petition, the court must still consider whether venue is proper in this District.

Traditional venue considerations apply in habeas corpus proceedings. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 493 (1973). The three factors considered in determining venue are (1) "where all the material events took place"; (2) where "records and witnesses pertinent to the petitioner's claim are likely to be found"; and (3) the relative convenience of the forum for the parties. Henderson v. INS, 157 F.3d 106, 127 n.25 (2d Cir. 1998) (quoting Braden, 410 U.S. at 493-94). Applying these factors and other relevant considerations to this case, the court concludes that venue is proper in the Eastern District of New York. Although the government's position that venue should be in the Western District of Louisiana is not without support, on balance, the considerations in favor of venue in this District, particularly the convenience of the parties, are weightier.

First, this case originated because of events that occurred in this District. While the government correctly points out that for purposes of habeas review, many of the relevant underlying events of the case took place during the removal proceedings, there are still significant connections between the case and this District that militate in favor of venue here. Benabdelmoutaleb was a longtime resident of Long Island City, New York, where he lived with

6

his wife and stepson until he was convicted of a crime committed within this District. In contrast, it appears from the record that Benabdelmoutaleb had no connection with Louisiana until he was incarcerated there by the government. Thus, to the extent that his activities in the United States may be relevant to the proceedings in this court, those activities are concentrated in this District. See Mojica v. Reno, 970 F.Supp. 130, 168 (E.D.N.Y. 1997) (Weinstein, J.) (finding venue proper in this District because, inter alia, the events giving rise to the case occurred here and as a longtime resident of New York, the petitioner "should have his case decided under Second Circuit law"). Indeed, a review of the removal hearing reveals that much of the testimony provided centered on Benabdelmoutaleb's life in Long Island City with his family, and the crime for which he was convicted in this very courthouse.

Second, the location of witnesses and records in this case also militates in favor of venue in this District. The witnesses who testified on Benabdelmoutaleb's behalf at his hearing, his wife and stepson, reside in New Jersey, and could more conveniently be called to testify in this District than in the Western District of Louisiana, should it prove necessary. The testimony of these witnesses is crucial to establishing Benabdelmoutaleb's eligibility for § 212(h) relief, which turns on the impact of deportation on an alien's family in the United States. Although the original records from the removal hearing may be located in Louisiana, this court has already been supplied with copies of all relevant documents by the government. Further, to the extent that obtaining additional records may prove necessary, the location of records is a factor of decreasing relevance given advances in photocopying and electronic transmission technology. See Savoy Owners Assoc. v. Ins. Corp. of New York, No. 02 Civ. 6145, 2003 WL 941098, at *3 (S.D.N.Y. Mar. 6, 2003) ("Here the documents are not extensive, and could be easily copied and

7

transported. This factor is neutral as to transfer."); Distefano v. Carozzi N. Am., Inc., No. 98 Civ. 7137, 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 27, 2002) (Johnson, J.) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, modern photocopying technology deprives this issue of practical or legal weight.") (citations omitted).

The court also concludes that, in the aggregate, the convenience of the parties would be significantly advanced by proceeding in this District, despite the fact that Benabdelmoutaleb is currently located in Louisiana. Because the Western District of Louisiana routinely determines that stays are unavailable in habeas proceedings, see, e.g., Naidoo v. INS, 39 F.Supp.2d 755, 762 (W.D. La. 1999) (adopting opinion of Magistrate Judge) (holding that the court has no jurisdiction under INA § 242(g) to issue a stay when a final order of deportation has been entered and finding that the court also could not enter a stay under INA § 242(f) because the petitioner had not shown "that execution of the order of deportation issued against him is prohibited as a matter of law")[2], it is likely that Benabdelmoutaleb would face immediate deportation without an opportunity for his claims to be reviewed if his petition were transferred to that District. See generally Nancy Morawetz, Oakdale Justice: Routine Vacatur of Stays in the Western District of Louisiana, 8 Bender's Immigration Bulletin (Jan. 1, 2004), at 10, http://www.lexisnexis.com/practiceareas/immigration/pdfs/web465_1.pdf (examining the Western District of Louisiana's approach of denying stays in habeas petitions and noting that

---

[2] By way of contrast, in Mohammed v. Reno, 309 F.3d 95, 100, 102 (2d Cir. 2002), the Second Circuit concluded that an evaluation of whether to impose a stay of deportation pending appeal under INA § 242(f) should be conducted under "traditional standards," and settled on a standard of "something less than fifty percent" because of "the gravity of the injury to the alien if a stay is denied."

because of it, "transferring courts must understand that a petitioner whose case is transferred to the WDLA will lose all opportunity to stay deportation."). Such an outcome would be, to put it mildly, inconvenient for Benabdelmoutaleb. The government, however, cannot credibly claim that it will be inconvenienced by proceeding with the case in this District, particularly where it has already fully briefed the relevant issues for this court. Based on this dramatic disparity in the relative convenience of the potential venues for the parties, the court concludes that this factor weighs heavily in favor of venue in this District.

Additionally, proceeding with the case in this District will serve the interests of judicial economy. As the Second Circuit cautioned in Henderson, when considering issues of convenience and venue, "two factors--the overloading of federal courts in a limited number of jurisdictions and the danger of jurisdiction shopping--are particularly important." 157 F.3d at 127. Here, the transfer of Benabdelmoutaleb's petition to the Western District of Louisiana would undoubtedly add to the "overloading" of the docket that has "come about in Louisiana due to the high concentration of persons detained at the INS' Oakdale facility." Id.; see also Emejulu v. INS, 989 F.2d 771, 772 (5th Cir. 1993) (noting that "the inundated district and magistrate judges of the Western District of Louisiana are toiling long and hard to process the torrent of habeas petitions flowing from the Oakdale facility" and that administrative delays have created an "atypical and unanticipated volume of habeas petitions that is beyond the capability of the district court to process in a timely fashion"). Even if the Western District of Louisiana did not face such heavy demands, traditional notions of judicial economy favor resolution of an issue that has been fully briefed before the court. See Santos-Gonzalez v. Reno, 93 F.Supp.2d 286, 292 (E.D.N.Y. 2000) ("the predisposition in this Circuit to reach the merits of a dispute in

9

service to judicial economy compel the assertion of jurisdiction by this Court.") (quoting Eltayeb v. Ingham, 950 F.Supp. 95, 99 n.6 (S.D.N.Y. 1997)).

The government contends that Benabdelmoutaleb's petition must be transferred to the Western District of Louisiana because Benabdelmoutaleb and the records in this case are located there and because the removal proceedings occurred within that District.[3] It is worth noting, however, that all of these circumstances were actually created by the government through its decision to re-locate Benabdelmoutaleb to Louisiana for his deportation proceedings. The potential for the government to forum shop in this manner demands that a court take a hard look at the ramifications of acquiescing to the government's request to transfer venue. See, e.g., Alcaide-Zelaya v. McElroy, Nos. 99 Civ. 510, 99 Civ. 9999, 2000 WL 1616981, at *5 (S.D.N.Y. Oct. 27, 2000) ("Although traditional venue doctrines should alleviate the concern that aliens will engage in forum shopping if permitted to bring suit against the Attorney General, it is clear that absent such a rule, there will be almost no check on the *government's* ability to forum shop. It is, after all, the government that directs where an alien is detained.") (emphasis in original). And here, where there are both strong connections between this case and this District and the benefits of proceeding in this District are manifest, the court must deny the government's request.

For these reasons, the court finds that venue is proper in the Eastern District of New York.

---

[3] The government does not explain how the court could simultaneously grant its requests to transfer the case to the Western District of Louisiana, where it claims venue is proper, and to transfer it to the Eastern District of Louisiana, where it argues jurisdiction exists.

**IV.     Standard of Review**

Review of a habeas petition pursuant to 28 U.S.C. § 2241 is limited in scope. While courts may review "purely legal statutory and constitutional claims," Calcano-Martinez v. INS, 232 F.3d 328, 342 (2d Cir. 2000), aff'd, 533 U.S. 348 (2001), they may not review "discretionary determinations by the IJ or BIA." Sol v. INS, 274 F.3d 648, 651 (2d Cir. 2001) cert. denied, 536 U.S. 941 (2002). Thus, a district court lacks jurisdiction to undertake a fact-intensive review of the merits of a petitioner's claims. Id.

**V.     Discussion**

*A.     Due Process*

Benabdelmoutaleb's first claim is that his right to due process was violated by the BIA because it failed to make a meaningful review of his appeal. (Pet. at 9-12.) He bases this claim on the fact that the BIA made two errors in its decisions, which he contends demonstrates that the BIA applied the wrong standards in its decision or even failed to make a review of his appeal. In its June 22, 2004 decision, the BIA incorrectly indicated in one place that it would "sustain the appeal" despite actually deciding to deny it. This error was corrected in an August 31, 2004 decision. (Kolbe Decl., Ex. O.) Then on September 27, 2004 the BIA released a second amended decision in which it corrected additional errors contained in the June 22 decision. As the BIA explained:

> In our June 22, 2004, decision, we inadvertently stated that a grant of a 212(c) waiver was warranted and that the respondent had not proved that the he would more likely than not be prosecuted. The language should have stated that a grant of a 212(*h*) waiver was warranted and that the respondent had not established that he would more likely than not be *tortured*.

(Sept. 27 BIA decision, Kolbe Decl., Ex. N) (emphasis in original denoting corrections).

11

Because the BIA's mistakes in its June 22 decision were limited to careless wording that was subsequently cured in the amended decisions, Benabdelmoutaleb's claims that the BIA either made no review of his appeal or applied the incorrect standard are without basis. As is clear from the September 27 decision, the BIA did make a meaningful review of Benabdelmoutaleb's appeal, including a thorough review of the record before the IJ. Although it would have been advisable for the BIA to have exercised greater diligence in reviewing its decision before issuing it, the errors were relatively minor and certainly do not rise to the level of depriving Benabdelmoutaleb of due process. Accordingly, this claim is dismissed.

### B. Res Judicata

Benabdelmoutaleb next claims that his deportation proceeding was barred by the doctrine of res judicata because he had already had another removal hearing in which he was charged as being deportable as an inadmissible alien, pursuant to INA § 212(a)(6)(A)(i) and for having been convicted of a crime involving moral turpitude, pursuant to INA § 212(a)(6)(A)(i)(I). (Pet. at 12-15.) The first hearing was terminated when the IJ discovered that Benabdelmoutaleb had been lawfully admitted into the United States on a tourist visa and that, consequently, § 212(a)(6)(A)(i) was inapplicable. (July 17, 2003 IJ Decision, Kolbe Decl., Ex. H.) Following the first hearing, Benabdelmoutaleb was charged with being deportable as an alien admitted as a non-immigrant who has remained for a longer time than permitted, pursuant to INA § 237(a)(1)(B), and as an alien who has been convicted of an aggravated felony, pursuant to INA § 237(a)(2)(A)(iii). On July 17, 2003 an IJ denied Benabdelmoutaleb's motion to terminate the removal proceedings, finding that res judicata did not apply because the issues in the two proceedings were different.

The decision of the IJ denying Benabdelmoutaleb's motion for res judicata was correct. Because the charges against Benabdelmoutaleb in each deportation proceeding were different, the issues involved were necessarily different as well. Since res judicata only applies where the same parties previously litigated the same issues, Medina v. INS, 993 F.2d 499, 503 (5th Cir. 1993) (applying the doctrine of res judicata in the context of immigration proceedings)[4], it is unavailable to Benabdelmoutaleb in these circumstances. While the parties were the same in each proceeding and many of the same facts may have also been relevant to each proceeding, the issues involved were clearly distinct. Both proceedings were premised on completely different theories as to why Benabdelmoutaleb was removable from the United States. See Parklane Hosiery Co., v. Shore, 439 U.S. 322, 327 n.5 (1979) ("Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."). As such, the first proceeding against Benabdelmoutaleb did not have preclusive effect as to the second. Accordingly, this claim is dismissed.

    C.    *"Particularly Serious Crime" Designation*

Benabdelmoutaleb challenges the decision of the IJ and BIA finding that his 2001 conviction was for a "particularly serious crime" as defined in INA § 241(b)(3)(ii). (Pet. at 15,

---

[4] The BIA and IJ applied the law of the Fifth Circuit because the IJ's decision was made in Louisiana. See INA § 242(b)(2), 8 U.S.C. § 1252(b)(2) (petitions for review should be filed in the "judicial circuit in which the immigration judge completed the proceedings"). Although the Second Circuit has not decided the "difficult question" of the "proper application" of res judicata in removal proceedings, Johnson v. Ashcroft, 378 F.3d 164, 172 n.10 (2d Cir. 2004), the Fifth Circuit's application of the doctrine is consistent with traditional notions of res judicata.

18[5].)  Under INA § 241(b)(3)(A), withholding of removal is available for an alien whose life or freedom the Attorney General determines would be threatened based on "the alien's race, religion, nationality, membership in a particular social group, or political opinion."  This relief, however, is not available where the "Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community."  INA § 241(b)(3)(B)(ii).  Where an alien has been imprisoned as a result of an aggravated felony for at least five years, the crime is automatically classified as serious, but where the imprisonment is less than five years, as with Benabdelmoutaleb, the Attorney General has discretion to make such a classification.  INA § 241(b)(3).  Thus, the Attorney General is vested with discretion to determine whether such crimes are particularly serious within the statute's meaning.  In making this determination, the BIA and immigration courts, as the Attorney General's designees, apply the following standard:

> in judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the respondent is a danger to the community.

Matter of L-S-, 22 I. & N. Dec. 645, 649 (1999) (citing Matter of Frentescu, 18 I. & N. Dec. 244, 247 (BIA 1982) ("the Frentescu standard").  Benabdelmoutaleb argues that the IJ and BIA applied the incorrect standard in evaluating his conviction and that application of the Frentescu standard would necessitate a finding that his crime was not particularly serious, rather than the arbitrary and capricious determination he claims was made.

A review of the record reveals that Benabdelmoutaleb's position is without merit.  To

---

[5] The pagination in Benabdelmoutaleb's petition is inaccurate; page numbers 16 and 17 are omitted but there do not appear to be any actual missing pages.

14

start, the BIA cited and applied the Frentescu standard in its decision affirming the IJ. (Sept. 27, 2004 BIA Decision at 2, Kolbe Decl., Ex. N.) Furthermore, both the IJ and the BIA took into account the relevant factors when assessing the seriousness of Benabdelmoutaleb's crime, particularly the circumstances of the crime and whether, based on these circumstances, Benabdelmoutaleb represented a danger to the community. Each looked to the fact that there were an estimated 800 victims of his crime and that he was ordered to pay over $200,000 in restitution as indicia of Benabdelmoutaleb's danger to the community. (Id. at 2; Oral Decision of the IJ, at 25-26, Kolbe Decl., Ex. M.) For instance, the IJ explained that "even though the respondent was not sentenced to a significant amount of time, I would find that the number of victims and the amount of restitution would be significant enough to raise the offense to the level of one that would be a particularly serious crime." (Id. at 26.) Thus, it is clear that Benabdelmoutaleb's claim that the IJ and BIA applied the incorrect legal standard in their evaluation of his conviction is without basis. As a result, Benabdelmoutaleb's claim can be read at most to argue that the IJ and BIA incorrectly balanced the relevant factors.

This court, however, lacks jurisdiction to undertake a review of the merits of Benabdelmoutaleb's claim because the determination of whether his conviction was for a particularly serious crime falls within the discretion of the BIA and IJ. Reyes-Sanchez v. Ashcroft, 261 F.Supp.2d 276, 285 (S.D.N.Y. 2003) ("It is clear from the statutory language of 8 U.S.C. § 1231(b)(3)(B) that the Attorney General's determination of whether a crime is 'particularly serious' is discretionary."). As such, it is outside the scope of review permitted for a habeas petition pursuant to 28 U.S.C. § 2241. See Sol, 274 F.3d at 651. Thus, this claim must

be dismissed.[6]

### D. Section 212(h) Relief

Benabdelmoutaleb also asks this court to review the denials by the IJ and BIA of his request for discretionary relief under INA § 212(h), in conjunction with his application for adjustment of status pursuant to INA § 245(a), 8 U.S.C. § 1255(a), claiming that they represented an abuse of discretion. (Pet. at 18-20.) Relief under § 212(h) is available in the form of a waiver of excludability for certain classes of aliens who are the spouse, parent, son, or daughter of a United States citizen or lawful permanent resident. In order to qualify for such relief, aliens must establish that their exclusion would result in "extreme hardship" to the citizen or lawful permanent resident family member. The determination of whether exclusion will result in extreme hardship is a matter of discretion left to the Attorney General. As such, this court lacks jurisdiction to entertain Benabdelmoutaleb's challenge to this determination by the IJ and BIA. Kalkouli v. Ashcroft, 282 F.3d 202, 204 (2d Cir. 2002) ("We hold that the determination as to whether an alien is eligible for suspension of deportation by reason of extreme hardship is a discretionary decision . . . and therefore may not be appealed to this Court."); Inico v. Reno, No. 99 Civ. 4738, 2002 WL 31102696 (E.D.N.Y. Sept. 11, 2002) (Gerhson, J.) (holding that court lacked jurisdiction to review BIA's denial of § 212(h) relief). Because Benabdelmoutaleb does not challenge these decisions as violations of the Constitution or laws and treaties of the United States, there is no other basis on which this court can undertake a review of his claim. See

---

[6] Because the court dismisses Benabdelmoutaleb's claim that the IJ and BIA erred in determining that he was convicted of a "particularly serious crime," there is no need to consider his separate claim in which he seeks reconsideration of his eligibility for withholding of removal pursuant to INA § 241(b)(3). (Pet. at 20-23.) As described more fully above, such relief is unavailable to Benabdelmoutaleb because of his conviction for a "particularly serious crime."

16

Adebeyo v. Ashcroft, No. 02 Civ. 02684, 2003 WL 21143028, at *4 (E.D.N.Y. Mar. 6, 2003) (Johnson, J.) Therefore, the claim is dismissed.

  E. *Eligibility for Convention Against Torture Relief*

Finally, Benabdelmoutaleb challenges the BIA's denial of his application for deferral of removal pursuant to Article 3 of the CAT. (Pet. at 23-30.) The CAT, which was implemented by the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, 112 Stat. 2681-822 (1998), provides in relevant part in Article 3 that "[n]o State Party shall expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." See Wang v. Ashcroft, 320 F.3d 130, 133-34 (2d Cir. 2003). Under the regulations adopted to implement FARRA, protection under the CAT must be granted when an "alien is more likely than not to be tortured in the country of removal," 8 C.F.R. § 208.16(c)(4), "but the burden of proof is on the applicant to prove that he or she is more likely than not to be tortured if removed." Wang, 320 F.3d at 133-34 (citing 8 C.F.R. § 208.16(c)(2)).

A district court has jurisdiction to review habeas petition claims arising under CAT, as implemented by FARRA. Id. at 142. The scope of review, however, remains confined to the traditional boundaries under § 2241: a court may assess constitutional or legal challenges to removal orders, but may not review factual or discretionary determinations of a CAT claim. See Sol, 274 F.3d at 651; id. at 142-43 (declining to specify the exact standard to be employed in reviewing a CAT claim, but finding that "challenging the BIA's application of the particular facts in this case to the relevant law falls within the permissible scope of habeas review"); Francis v. Ashcroft, No. 02 Civ. 848, 2003 WL 22232950, at *3 (S.D.N.Y. Sept. 29, 2003) (the

17

"factual decision--whether an alien is more likely than not to be tortured if he returns to his native country--is the product of an exercise of discretion and is not reviewable by a habeas court."); Amadi v. Ashcroft, 270 F.Supp.2d 336, 339-40 (E.D.N.Y., 2003) (Gershon, J.) (dismissing CAT claim where petitioner challenged only factual determinations of the BIA); Reyes-Sanchez, 261 F.Supp.2d at 292 ("The BIA's factual determination that Reyes-Sanchez failed to demonstrate that it is more likely than not that he will be tortured if returned to the Dominican Republic is a discretionary decision, and is therefore not reviewable by this Court."). Thus, a district court may not weigh the sufficiency of the evidence before the BIA in assessing a CAT claim.

Here, Benabdelmoutaleb asserts exactly the type of factual challenge to his denial of CAT relief that is outside the scope of habeas review. He contends that he presented evidence to the IJ sufficient to demonstrate that he will be subjected to torture upon his return to Algeria. Specifically, Benabdelmoutaleb makes the following assertion:

> The petitioner presented through his testimony that he would come into the hands of the Algerian government immediately upon his arrival in the country and he will be incarcerated, he will be subjected to interrogation and the government of Algeria surely will find out about his political opinion, illegal departure and his failure to report to the army.

(Pet. at 27.) Because this contention calls only for a reconsideration of the factual determination of the BIA, the CAT claim must be dismissed.

## VII. Conclusion

For the foregoing reasons, Benabdelmoutaleb's petition for a writ of habeas corpus with respect to his removability is denied. The Clerk of Court is directed to close this case.

The Clerk of Court is further directed to transfer Benabdelmoutaleb's October 19 Opposition, Docket Number 8, to the Western District of Louisiana to be filed as a new petition challenging Benabdelmoutaleb's present physical confinement.

SO ORDERED.

Dated: May 20, 2005  /s/ Nicholas Garaufis
    Brooklyn, N.Y.  NICHOLAS G. GARAUFIS
                                                   United States District Judge